Now, Mr. Adams, we're ready when when you are. If it pleases the court, I represent the plaintiff appellant, the colony insurance company. This matter has to do with waiver and estoppel and protective safeguard endorsements and an insurance policy. I'd like to begin by pointing out that Colony only agreed to insure the building that caught fire if it had protective safeguards. Colony only intended to insure this building if it had protective safeguards. And to show you why that's clearly what Colony intended, what they agreed to, Colony asked questions about the protective safeguards and the insurance application. Colony then included a fire protective safeguard endorsement to the policy, which read, and I quote, as a condition of this insurance, you're required to maintain the protective devices or services listed in the schedule above. Colony also added an exclusion to the policy, which reads, We will not pay for the fire. You failed to maintain protective safeguards listed in the schedule above in complete working order. And finally, the underwriter on this file testified that Colony would have rescinded the policy as soon as its procedures allowed once it learned that the power and heat were never turned on. Let's assume that you let's assume that you waived your actually waived the endorsement provision. The question is, how long a grace period should you get, or should you get one at all? Well, the defendants would contend, I believe, that the instant the report hit the desk at Colony, Colony should have read it and reported to them on what was in the report and taken whatever action it was going to take. We contend that there is no law in North Carolina on what the grace period should be or how long Colony should have. There is no North Carolina law. And I believe there is a North Carolina law. We couldn't find any. I don't believe the opposing counsel has cited any law from the state of North Carolina and North Carolina appellate courts. There's no time period or no reasonable time period. I'm not aware of anything like that. No, sir. However, we contend that Colony contended at the trial level and contends here today that this court's decision, United Capital versus Kapolov should control. And in that case, the court held that the insurance company was entitled to at least 60 days and maybe longer to review the report and take action on it. And in the Kapolov case, they actually, uh, it was a year before they actually advised the, uh, insured. And what kind of, what state law was that? That again, defendants would contend it's, it's Maryland law. I contend it's not Maryland law. The court, the court in the Kapolov case did not cite any Maryland law for this proposition, nor did they indicate that they thought they were following Maryland law, nor did they indicate that they were predicting Maryland law, but it was a, it was a Maryland law case. Well, it was, it was clearly a Maryland law case. Yes, Your Honor. But, but again, we would suggest that we're supposed to apply to state law and there is diversity case. Yes. This is a diversity case. Yes, Your Honor.  That we're supposed to apply the state law of North Carolina. That's correct. And, and the case you cite was from Maryland, but it didn't cite any Maryland law for this point. That's correct. So it's, it's what? Four circuit law? It's four circuit law. Is that what you say it is? We would say it's four circuit law. How can a four circuit make up state law? Well, I would suggest it, uh, an urge to this court that this court adopt the, the ruling or the decision, the rationale in Kapolov as what, I guess, predicting what the law would be in North Carolina. And the court, I think, makes a very compelling, we're supposed to, we have to predict, make a best guess of what, what the North Carolina law is. Well, I would suggest first that it's four circuit law and that you can follow the decision of Kapolov. Normally the four circuit, four circuit can't make state law, I don't think. That has to be made by the state legislature or the highest court of the state. And if the North Carolina court's had a procedure to certify the question, we might be here asking them to certify it. We don't have that procedure. It's the only state in our circuit that doesn't have one. That's correct. So, um, but the end result can't be that four circuit can make up a law and then you then apply that to North Carolina. What you have to do is to go in and look at the North Carolina cases and give it your best guesstimate of what you think North Carolina will do. And so that's where we are left here. And that's how we slide in this whole business of, is this a condition proceeding or is it a forfeiture? And you get into the whole North Carolina, which is different from Maryland in terms of how you construe these policies and who, when something is ambiguous, uh, and that's kind of where we are on this and maybe why the judge submitted this in a way it did. I don't believe he provided any guidance and didn't tell the jury what, how many days was what the grace period was. I think you can use the, I think the four circuits decision capital of was what I would describe as a common sense approach to an issue for which there was no law even in the state of Maryland. And the, uh, the judge said, you know, not, you know, read from his opinion. He clearly said that you've got to give the insurance company time to investigate the facts, make the decisions because if they make the wrong decision in denying coverage or rescinding the policy, they're subject to bad faith. And the judge said, If you do, depending on whether it's a forfeiture or condition proceeding, the question is whether it's void ab initio or whether it's void of both. And if it's simply voidable, then it's one of those types of situations that if you went and told the person, maybe they'd get to fix it or whatever. If it just boards, the contract outright, that's one thing here. The problem is I understood it is the $250 that was paid, paid the $250. And it was more or less an indication that, well, you're paying $250. If there's something wrong, you're going to come back and tell us. And nothing happened. I mean, you go in and expect this thing. And that is, there's a dispute of fact on that issue. The jury didn't resolve that particular factual issue. It is, it is colony's contention and it was colony's testimony that it was for the benefit of colony. Defendants contend it was for their benefit. The endorsement itself, which says you shall, the insured shall pay $250 for the inspection report is completely, that's all it says. That's the benefit of the insurance company. That's colony's contention. Which should pay money that benefits the insurance company. So the insurance company, so the insurance company can go and have someone review the property and make sure that the representations in the application are correct and make sure that the insured is in compliance with the protective safeguard conditions. And that's what the inspector went and did was inspected the property, sent it to colony. Colony followed its standard operating procedure for processing the report. And 27 days after colony received the report, there was a fire. And when the report was issued, did it indicate when the utilities and the conditions were not met on the property? I believe it indicated they'd never been turned on the power and heat had never been turned on. Since when? Since the, uh, since before the policy was issued, the representations were in the application that the power and heat had been turned on, were on, or would be turned on. They'd been on at some point and then they were turned off. Well, cause the building was vacant. The building was vacant, but that's when it was. So. So I believe that the testimony was that they inspected it or you all inspected it. And then the report came and it moved around. They didn't have tests or something got lost. They, they, well, it went through the, it went through the ordinary channels at, um, colony. Um, it was received by an assistant underwriter, Ms. Shutt. And it's her responsibility to look at the report, see if the inspector has any recommendations that he would make to the, the underwriter assigned to the file. And if, if so, she brings those to the, she sends us along with the report to the underwriter, but she does not take the report according to the undisputed testimony. In this case, she didn't, she was not required or obligated or supposed to take the report. So let me go back and look at the application and see, is the application consistent with the report? Because as the jury found it wasn't, they misrepresented that the heat and power wrong when in fact they weren't. Let's talk about Randolph bank a minute or your position about that. What are they a lost pay or an innocent mortgagee? I think at best they're an innocent mortgagee. Okay. Okay. But if, if the, if the court were to remand this, apply the 60 day rule of capital law to remand this case, we believe that the instruction should be for the court to, uh, enter judgment rescinding the policy. If the policies rescinded Randolph bank also doesn't recover. Well, they're lost pay or a mortgagee. Well, if you're a lost pay, you'd agree that they stand in evergreen shoes. That's correct. And as a mortgagee, I also believe that they, if the policies rescinded ab initio, there is no policy and they don't cover as well. With regard to, um, condition precedent, uh, the points I was making show how important, uh, the protective safeguards were to colony. In fact, we contend that protective safeguards were an essential requirement of the law that makes them a condition precedent. It's our contention that there was no contract. Well, it's pretty clear in the North Carolina law that conditions proceedings are strictly construed. That is correct. I don't recall that language, but I would not disagree with your, your honor about that. Look at the Harris and Harris construction case. When you get a chance, I mean, it's pretty clear. I mean, I've been reading that for years. And I can tell you it's pretty clear, at least to me at this point, but maybe you can convince me otherwise that they ought to be constrictly construed and that any ambiguities are construed against the insured. That's North Carolina law. But there's, there's no ambiguity here. I didn't go there yet. I just want to make sure we understand that, you know, what we're, what groundwork we're dealing with. Uh, so, so once we get in that parameter, we know what world we're living in and not in the Maryland world, which somewhat different. Right. But I don't think, I don't think regardless of whether Maryland law applies to what's the condition, because admittedly and Maryland law in North Carolina, right. To right. But the 60 day, you agree, Maryland law doesn't apply. Absolutely. The rules are different. Uh, the rules on, you agree that there's no such thing as a federal common law in this context, or could we make something up like that? I mean, maybe that's what, I don't want your honor. Maybe the fourth circuit makes something. I think maybe we already did. That's what you're saying. Well, I believe there is, there is the capital law of his fourth circuit authority for the project. So we made up a 60 day rule for Maryland or does it made it up for the fourth circuit? And you're saying it made it up for the fourth circuit, including North Carolina. And we urge your honor, if nothing else, to, to, to, to use that as guidance. And yes, or in crafting a rule that should apply in this case. We've got some cases lurking around to say that we give deference when we don't have a, when we don't, don't have any real state law to look to under Erie. That once in a while we give deference to the, to the district judges in the state on a kind of a theory that they know more about it than that. Maybe appellate judges from other states like judge Floyd and me. Have you ever heard that principle? I have your honor. You're not arguing that here though. No, you'd be argued against that here. Yes, that's correct. And I'm not always sure the district court judges aren't necessarily that right. That's, that's not real strong principle, maybe, but that's I think there's some cases. So judge, we're going to continue with the condition precedent. I will confess that I've been doing this for over 30 years and I still scratch my head sometimes as to the difference between the condition precedent and condition subsequent. It's not as clear in North Carolina as maybe it should be. And as I said, not trying to argue metal law applies, but I can't stand here and explain to you why North Carolina says vacancy is not a condition precedent and Maryland law says it is, but, but it does. And I can't. Well it depends on the words that are used in the policy. If the policy is very clear in indicating basically you don't get coverage unless you do X, Y, Z that pretty much sets it pretty much as a condition proceeding. If, if, if the policy reads as, as it seems this one may read, we will not pay for any loss if you fail to maintain any protective safeguard. That seems a little different than a condition proceeding because it, it basically is not, we won't pay until, until it's done is we will not pay if you fail to maintain. That's more of a forfeiture type situation. Basically, you've got a, you've got coverage and, but you can forfeit it if you don't do these things. Not in this case, Your Honor, because this was the heart and soul of this contract. They were only insuring a building that had protective safeguards. They weren't insuring any building and said, Oh, if you don't keep the protective safeguards up, there's no coverage. They asked on the insurance policy, insurance application, do you have heat and power on? Yes, we do. Uh, we told them it was a condition of the coverage. We had an exclusion. If it were your situation because of the facts that indicate that they had already tried two other companies. I think that it turned them down. Uh, the other building had burned down and here's this one burned down by an employee. I mean, the red flags were all up, but I'm not sure that when you think about it, what does that mean from an insurer? Does that, even if you deal with a 60 day thing, so if you know that who would wait 60 days or even 30 days or one day, if you know a report is coming in on someone where there's red flags on. We, and that was an issue that got confused in the trial court level. I believe we didn't know in one day, we didn't know in 27 days under the process followed by colony, which I believe the court and capital office said was a reasonable procedure to take. It didn't get to the underwriter who has, her supervisor said is handling at any given time, 200 to 400 tasks. It didn't make it from the assistant underwriter. It made it into what's called her task or work task you or task work you made in her queue. You put that assess that in terms of whether this should be something that should, it knew it to you benefited insured and insurer, uh, when it was your company that selected this on the writer, selected inspectors, selected this person who's doing these things and, and you know what you're doing and you, and you think this condition is so important. It's just a condition preceded. First thing you do, you'd go through then at least with red flag, any things that violate a condition proceeded, I would think that's, that's not the procedure that was not testified to be the procedure. And probably has changed now though. I don't know, but that was not the procedure. Colony followed a reasonable procedure in this case and 27 days after it had had the, for the 27 days after it had to report, there was a fire before colony and had an opportunity to review the inspection. Well, if we, if we find capital off applicable, does it matter how we characterize the endorsement provision? No, none. Don't make any difference. Call it condition proceeding condition subsequent. Um, and you're like red lights on what we give the other side of the chain. Yes, sir. Thank you. Your honors. Talk about this thing. Mr. Kane. Thank you. Your honors. May it please the court. Patrick Kane representing Applebee's Charles Peterson and evergreen composite technology. And your honors, I'd like to start with the idea of a condition precedent and judge when you're absolutely correct that under North Carolina law and the Harris case in particular conditions precedent are to be construed strictly. However, regardless of whether 24 years as a judge, it's not led me wrong on that point. And I would, but I would go a step further, your honor, and say that it doesn't matter whether this is under North Carolina law. It doesn't matter whether this is a condition precedent, a condition subsequent, a condition of forfeiture, whatever you want to call it under North Carolina law, waiver and estoppel are appropriately sent to the jury. And that's what the district court did in this case. And that decision should be affirmed. And that jurisprudence starts all the way back with the Horton case in 1898, your honors, in which the language of that, that case can't be much more clear. It's on page 27 of our brief and the Supreme court of North Carolina stated there that any condition, any condition in an insurance policy may be waived by the insurer's conduct. And notably the one specific type of prediction of condition that the court mentions in Horton is a condition precedent. So under North Carolina law, any condition, be it condition precedent, condition subsequent, you don't need to figure out what this was because it is appropriately submitted to the jury on the issue of waiver and estoppel. Your honor's turning to the questions that you asked counsel for colony regarding the capital off case and whether or not it was in fact dependent on Maryland law. I would respectfully disagree with Mr. Adams that there was no review of Maryland law in coming to the determination in that case. In fact, this court said that one of the bases for its rationale in capital off was that to apply waiver and estoppel under the facts of that case would create a duty that is not found otherwise in Maryland law. So the court was clearly cognizant of what Maryland law was when making that determination. You think we were applying Maryland law? I think absolutely. You were applying Maryland law, intending to apply Maryland law. Correct. And to the extent that colony contends that this court in capital off created some sort of absolute fourth circuit federal common law that should then apply to this case. I think that argument is misplaced that, you know, this whole business of whether Maryland law was applied in capital law. You know, when I read it the first time, I, I didn't think there was any doubt about it. Judge Nehemiah stated, he said in Maryland insurance policies are not in the first instance construed most strongly against the insurer. That's totally the opposite of North Carolina cause. Uh, so I thought it was clear. I didn't know it was one of those things where they didn't basically say it in the state law. And then, and even if you did, it had to be somebody's law as judge King has indicated. We don't have common law, so I don't know what law you were relying on if it wasn't Maryland law in that case. I agree completely, your honor. And, um, notably capital off has not been cited for the 60 day escape provision that colony would like to have been made an absolute federal common law rule by that case. I have a whole basis of, of not construing policies against the insurer. Even if it is 60 days in Maryland, you can understand it. That makes sense. You wouldn't construe it against the insurer, but if it's totally the opposite, I'm not sure how that comes out in a state that goes the other way. Correct. Your honor. And what the way it comes out in North Carolina is that that question, the issue as to whether there was appropriate time to review the information in the files is a question of fact that goes to the jury. And that's precisely what happened in this case. And judge Osteen was correct in submitting that issue to the jury. And the facts of this case are clearly different than the facts that we're confronting this court in capital off. In capital off the court determined that the insurer who at that point was adjusting a claim and therefore was subject potentially to a bad faith claim. Uh, that wasn't the case here. There was no adjustment of a claim. There was actually a, an inspection as your honors have noted that occurred as part of the policy bargained for part of the policy, $250 that the insureds paid for that. Um, colony undertook a duty to inspect the property. They did inspect the property. They received the inspection report. The inspection report had all of the facts that they needed to make a determination. They didn't need additional time. Your honor, joint appendix, page 10 53. They were charged with knowledge of what was in the inspection report when it was received. I think that under North Carolina law, that is the black letter. That is a black letter law that an insurer is charged with knowledge of, um, what is in its files. I don't think we would go so far as to say that under certain facts that it takes place immediately, that, that as soon as they received that information, uh, they waived their right to,  but it's under North Carolina law. It's a question for the jury. And, um, on joint appendix, page 10 53, Roseanne Gauthier, what was the judge's instruction on the, how much time they had to act on? There was no specific instruction given. It was simply whether the conduct of the court didn't say one way or the other. Was there any objection to the way it was instructed, the way the jury was instructed on the point? There was not your honor, your position that, uh, uh, that the insurers insurers liability attached that day, not with, if the fire had occurred the night after the policy was issued, which would you say that the insurance company would be on the hook for that? I think that that would be a question for the jury, your honor, that was there sufficient time to review under the policy or the procedure that colony implemented. And what the facts of the case were here was that they received the policy or they received the inspection report on April 21st that had all the information necessary to make it a stop. It happened on the same day. That's, that's true. Your honor. That's what this case is resting on is a stop waiver, right? Waiver and estoppel. Your honor. I think that that's a possibility. The fact that's aren't, those aren't the facts of this case. So how do you just start a stopper? If it happened on the same day and the fire happens then, and then you come in and says, he made this representation. You want to rely on the stopper. I don't know where you're getting that from. If there have these additional facts that are here. Correct. Your honor. And, and the additional facts are what were presented to the jury, what the jury found. Those are not in dispute. And that is what the jury used to find that colony waived its right to rescind this policy, reject coverage. And your honor, I think what's notable and where this case differs substantially from Kapoloff is that, uh, Roseanne Gauthier, the individual, a colony who was charged with making this decision and reviewing the inspection report and who waited 27 days. This data was in columnist file because that's the presumption. The presumption is, is that cognizant data of the official files of the company are presumed to be known by the insurance company. And it seems to be the other side has indicated, there's some question as to whether this data is in the files of colony or some third party or someone else for 27 days. And Colin really doesn't know about it. Don't have to defile the fact that that's not a question of factor on her. I mean, the jury conclusively found that this inspection report was in the inbox of Roseanne Gauthier from colony. And she chose not to look at it because she was too busy doing what she called premium generating tasks. Your Honor, I see my time is up. So I'm going to yield to my colleague, Mr. Brian for Randolph bank. Thank you very much. Thank you. Your honors. Mr. Brian. Sir. Thank you, Your Honor. Jim Brian here, uh, with the next and prove it firm in Greensboro, North Carolina. And I'm counsel for Randolph bank and trust company. So let me start you out. Yes, sir. What are you? A loss payee or an innocent mortgagee? Well, we are, we are both, Your Honor. We're a loss payee who stands in the shoes of the borrower evergreen and Mr. Peterson. And we're also a mortgagee. There's two different types of coverage. Mortgagee coverage is for the building loss payee coverages for the business, personal property, business, personal property, liability limits is 3.5 million. The limits for the building was 1 million. Jury said value of the building is 635,000. And the value of the business personal property was I think 1.6 million, something like that. So we're both, we're both, but the analysis is different, uh, under both. Um, and the jury, uh, had the issue of, was the bank responsible for the misrepresentation? And that was the funding for this building before you had the insurance policy. The history behind this is that the building was, um, purchased in 2007. And at that point, the bank loan money for the purchase insurance policy was in place with another insurer from 2007 to 2009. The policy lapsed. The bank didn't know about it. Mr. Peterson didn't know about it. And then a building burned down at the facility in February of 2010. And they thought about this business, but the bank didn't know about it. It seems like most of the time they are put on something you put in that policy. A bank wants to know if a policy has lapsed. Absolutely. My house doesn't have a policy on it. I promise you, I'm going to get a call real quick. Absolutely. You're on it. I just don't understand how you have millions of dollars on a building and you don't know that a policy has lapsed. And I know this is sort of aside from the issues here, but it's interesting as you build up and then you get into this new policy and you know, there's a policy. And I assume the bank has read this policy and they've seen the conditions, whether it's a forfeiture or whatever, it seems like you would have an interest in making sure there's compliance. Yes, Your Honor. And so with the first policy, they all recognize when the first building burned down that somebody had made a mistake. Not sure who, but the order of the day was, let's get another policy in place. And it was the first building was arson. Probably the same situation, same situation. So yeah, so when the colony policy gets put in place, the bank feels like they are acting properly in getting everything in order. And the $250 inspection fee was, it made sense to them. It was like a backstop in case something happened, something wrong in the application process. Lessons learned for the bank on this one, isn't it? Lessons learned, Your Honor. It won't happen again, will it? Well, I hope not. I hope not. It's a small community bank. It's very important. Let me revisit my lost pay issue. Assume we find capital loss applicable. Obviously, Peterson can't recover. Do you still want to be a lost payee? Well, if Mr. Peterson can't recover as a lost payee, the bank cannot recover as a lost payee. I'm just asking to make sure. Right, right, right. So that the building, the personal property tower of coverage is gone for the bank. And then it falls back to, okay, let's talk about the mortgagee coverage for the building. And so the issue that went to the jury of was the bank responsible for the misrepresentation, the jury found, no, the bank's not responsible. But Colony has appealed the judge's Rule 50A, or appealed his order under Rule 50A saying, as a matter of law, the bank was responsible for the misrepresentation. And I think that the key fact that was in evidence was that the bank had no control over what Mr. Clayton was going to put on that vacancy supplement. Because remember the facts were that the bank talked to Mr. Clayton and then Mr. Clayton, the agent went over to Mr. Peterson's office and they talked about how to fill this form out. And then Mr. Clayton submits the form thereafter. And the jury must've concluded with their no, that the bank could not control what got put on that vacancy supplement. So we contend that Judge Osteen properly denied the Rule 50A motion on that issue. And the other issue about the substantial change in risk, which was jury issue six, Colony has appealed that issue as well under substantial change in risk. And the jury didn't get to that because they had already found a waiver and a that if we're just talking about mortgagee coverage, the bank knew about a substantial change in risk, but the facts were in evidence that Mr. Ammon of the bank got a phone call from Mr. Clayton and the bank's lawyer got a phone call from Mr. Clayton. And in both phone calls, Mr. Ammon understood that Mr. Clayton was saying that Mr. Peterson had a letter that said he'd taken care of the power and heat, had him turned back on. And so that was in evidence to show that the bank, so the bank did not have knowledge of a substantial change in risk. And that's why Judge Osteen properly denied the Rule 50A motion on that issue, which never went to the jury. So let me fill in a couple of gaps from the questions and presentations about the capital law and rescission. As you all have noted, North Carolina laws should govern this case, not Maryland law. Maryland law is different in several respects, one of which it hasn't been discussed, is that in the capital law case, the court said a vacancy condition cannot be subject to waiver and estoppel. Well, in North Carolina, we got Supreme Court case law that says a vacancy condition can be subject to waiver and estoppel. So that's a clear example of a difference between Maryland law and North Carolina law. Maryland also allows extrinsic evidence to be reviewed to construe an ambiguity. North Carolina does not allow extrinsic evidence to be reviewed to construe an ambiguity. So these are big differences. And in the North Carolina precedent, it's the law seems to be that the court focuses on the broad risk, not the narrow risk of the safeguards. They focus on the broad risk. It would be nice, Your Honor. It would be nice. But the general assembly has to take care of that, obviously. Well, the general assembly. Okay. You're right. You're right. You're right. Um, but North Carolina looks at it in a broad sense that if the building is in the policy and the risk of fire is a peril that's insured against, then the risk is within the coverage and it's subject to a breach of a condition is subject to a waiver and estoppel. Um, on the, uh, the capital off case regarding the escape clause, the 60 day period, um, the North Carolina standard for bad faith and unfair trade practices is reasonableness. Uh, and so the insurer is not given a 60 day grace period under North Carolina law. Uh, there's no immunity given for 60 days. I mean, an insurer can be found to have acted in bad faith and unfair trade practices on the second day of getting a claim in. I mean, that's the North Carolina law. It's just a reasonableness standard. Uh, and so that would be another reason not to have, not to follow. Is that the majority rule around the country? Um, I don't know, Your Honor.  but I don't have a case, but I've been practicing in this area for a long time and it always seems to boil down to reasonableness. So it seems to boil down to reasonableness. So in closing, uh, the Appleys,  all requests that this court affirm judges Osteen, Tilly and Ald on all grounds, uh, and that the equities affair dealing, uh, should not permit colony to avoid liability in this case. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Teague. Good morning, everybody. Lisa Carr, Steve Teague, along with Lynn Broom represent third party defendants, Ed Clayton Jr. and HPB Insurance Group Incorporated. Um, a couple of quick points about waiver. Andy Stoppel, the colony underwriter, Ms. Gauthier testified clearly that the inspection report was in, um, her inbox. She had access to do, to review it. She chose not to because of colonies adopted policy of not reviewing those inspection reports. It was at the bottom of a list, and this is undisputed. And at the top of the list was matters that generated new income or profit. So colony instituted a routine business practice or business policy of essentially not looking at these inspection reports or essentially waving the obligation generated by the $250 and otherwise to analyze the risk. In addition to that, at trial, colonies, witnesses clearly testified that colony made the decision as to how many underwriters to hire. And they certainly could have hired more personnel or cut back on the cutbacks of personnel so that these tasks could take place on a timely basis. And I concur with my colleagues, Applebee's, other attorneys, that, uh, it is as to waiver and estoppel under North Carolina law. A fact, your fact based inquiry on reasonableness standards and that that was presented to the jury under appropriate and not challenged instructions and that the jury verdict should stand on those points. Ms. Goatia, the underwriter for Connie also testified, which is a key point that had she taken the time to look at the inspection report and read it, then she would have taken immediate action to cancel or rescind the policy. So is it your position under the colonies procedure or policy that because that that reading the inspection report at the bottom of the list, they can't even meet a reasonableness test? Yes, that was one of the facts that was presented to the jury. That was Connie's actions reasonable in connection with not reviewing the report that it had and sat on and the listing of priorities all focused on new business. Even though this is relatively new business, all focused on acquiring new business, i.e. generating more profit and more premium. That is a key factor in the failure of calling to exercise reasonable and do care in connection with waiver and estoppel on that point. And again, Ms. Goatia said this goes to capital law. Had she done that, she would have taken immediate action to cancel or rescind the policy. Wouldn't have to be in any delay at all. And that's not disputed on the other point. Key point we contend that faces the court on condition of contract condition precedent or condition condition of forfeiture believe that the structure of the policy is rather important or provide some common sense analysis to show that the condition was indeed a condition that could be waived under the applicable law. Um, as I believe your honor, judge, when indicated in the Brian brothers opinion, in that opinion where there was conditional language that was deemed to be a condition precedent that was in the initial insuring agreement. In this case, the policy begins on record on appeal page 73 and runs to record on appeal page 132. The insuring agreement is on one on page 84. I believe close to the beginning of the policy says says we ensure this. And, um, then you get to the fire protective safeguards endorsement that is in the back half of the policy in the section for exclusions. So we all read left to right and front to back. So in addition to what my colleagues have pointed out to the court, the simple structure of the policy shows that it is definitely a condition that could be waived as was colonies. Uh, act actions, business practice, because there are multiple examples that came into evidence where there were different factors on the applications, um, that were later discovered. And there was no rescission colonies. Business practice was not, in fact, to rescind. It was to work with the insured and rectify anything needed. Thank you for your attention. Thank you, Mr. State. Mr. Points real quick. Uh, the jury never was asked and never made any determination on whether what colony did was reasonable. And it was, I'm not arguing about that. We haven't. There was no objection to the instruction. They were not instructed on reasonableness. Read the instruction. They were not. Uh, there's also testimony. I mean, there's also argument that, um, the jury found that Miss Gauthier chose not to read report that there was jury to make that finding. Um, it's not a condition precedent. And I don't even think it's that judge when I think it is, I said, or I think it, the, the safeguard conditions is part of the basis of the bargain. It's part of the contract. It's part of the fundamental agreement between the parties and we'd argue there was no contract. There was never a meeting of the minds because we told them in the first instance there had to be this. These were properties we were assuring because that you have these safeguards in effect. They didn't have them in effect. I think there's no contract. And that's why I think we are entitled to rescind the contract. Uh, and it shouldn't even get the waiver and a stop. But if you get the waiver and a stop, oh, they've not suggested what the time period should be. I don't know what the colony can conform. What kind is it? Needs law to tell them what it can conform its conduct to. How long do we have? Is it just reasonable? And can five juries reach different conclusions? It's reasonable. It takes five days, 10 days, 20 days, 30 days. I suggest the capital of cases that it's at least 60 days. Um, and to whoever made this comment was correct. If I misspoke, I apologize to your honor. It was all once the report was sent to colony, it was received in colonies possession. So it was in colonies possession on the day he stayed. I think it was the 21st of April, and it was an assistant underwriter who dealt with it. It was not her responsibility to see if the conditions were met. Her only responsibility to see if the adjuster had made any recommendation. She didn't forwards it along to the underwriter, Ms. Gauthier, and she had not looked at it by 27 days. But colony is presumed to know that since it's in the official. Well, for some, for some purposes, you're, you're, you're, you're deemed to know what's in your files, but I don't believe you're deemed to have waived, have committed waiver or a stopple because it may be in your files, but you haven't read it on day one. I do think you're entitled to some period of time to read the report. She said if she knew what was in it, she had acted on it right away. If she had known what, but she didn't know what was in it. I think the judge, I think you had read it. She would have acted on it. So, and I think that's correct. And what we want this court to rule is that she's entitled, that the colony is entitled to, and she's entitled to a certain period of time. You want us to come up with a time period? I want you to adopt capital off 60 days. I want you to adopt capital off 60 days, but I'm happy with 30. I'm happy with 30 because the fire happened after the 27th day. And I have to take 28. If you get it, would I have to disagree? First? I don't think Mr. Bryan is correct in stating that reasonableness in terms of the amount of time is the majority rule. I don't think there's any majority rule. I'm not sure. The whole lot of cases out there on time. I mean, why should you 60 or 30? It seems like you're going into reasonableness. Isn't that a question of fact? I mean, I mean, we can pick any time period when pellet courts start picking time periods, it seems like you need some scientific data or something to support the basis for having done. So other than it feels good or I don't know what the number, why not 29 or 28? I mean, the jury makes the determination and we make, we allow them to make some of the most difficult decisions. I got a question on this capital law case, but that's not what does look like Maryland law is being applied there. Your honor. I challenge you or Mr. Bryan or anyone to read that part of the opinion. And the court does not cite any Maryland law for some in support of that statement. Either time it makes us wrote this opinion. He's a Maryland judge and in that opinion, he set out first, he started talking about Maryland law law. So I don't know why he would switch in the middle of the opinion. Just like any of your honors. I would submit to you if you were going to make that statement, that it may be a year you're entitled to a year, but certainly that you're entitled to 60 days. If there was any authority in Maryland to support that proposition, there would be a citation to it. There's no citation to it. Any either time he mentions a time period, no citation to it. And I submit to you on that's because there is no Maryland law on this point. And he was coming up with a common sense approach that in the future, insurance companies could conform their conduct. And he said, if you look at everything it ought to be, it ought to be a nice bright line and made everybody know what the law is. Exactly. And so, so that going forward, colony can come from Maryland. I don't know about North Carolina, if you can do that because it's not construed against the, you know, there is this presumption that has flipped in North Carolina. Right. You agree. I mean, absolutely. But that doesn't change. That doesn't change the fact that, that there, that it's, it's appropriate for this court to one, to adopt the ruling capital of number, to recognize that there is need for conformity in the, in the, there needs to be a state bright line. Maryland court of appeals can change that in a day. And he says, you know, why I got the law wrong in Maryland and we're going to tell you what it is. I mean, they might, but I would suggest that I don't think we ought to argue Maryland law. I don't know why I'm not arguing Maryland law. Your honor. I don't believe that's, I don't believe that the statements in the opinion are Maryland law. I would challenge him to find a case that says that he didn't cite any cases. I believe that as you said, he's a Maryland lawyer. It's precedent. It's it's at least persuasive authority. We can't make up law for the reasonless argument. Your honor is a problem because as I said, then what's reasonable is going to be different in every case. Every time you put 12 people in the box and that, and that means that colony has no way to know what the conformance conduct, but that's the purpose of the law. And this is an opportunity for this court to say, yes, we agree. 60 days is a reasonable period is the time. And then colony and every other insurance company knows that's how long they've gotten. If they, if they choose to push it to the bottom of the pile and don't look at it in 60 days, excuse me, that should be up to the state under Erie. It shouldn't be up to some federal court. I don't think, but anyway, you fellas have done a great job. We appreciate it. Thank you. Your honor. So to have you here, we're going to come down and greet council and take this to brief short break. Okay. This honorable court will take a brief recess.
judges: Robert B. King, James A. Wynn, Jr., Henry F. Floyd